UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

3 WEST 16TH STREET, LLC,

                       Plaintiff,

  -against-

COMMONWEALTH LAND TITLE INSURANCE
COMPANY,

                       Defendant.

---

Case No. _____

**COMPLAINT**

Plaintiff 3 West 16th Street, LLC ("3W16"), by and through its undersigned counsel, for its Complaint against Defendant Commonwealth Land Title Insurance Company ("Commonwealth"), alleges as follows:

## The Nature of the Action

1.    This action arises out of Commonwealth's willful and material breach of a title insurance policy that was issued by Commonwealth to 3W16 on March 24, 2006 (the "Policy") in connection with 3W16's purchase of a fee simple title to a building located at 3 West 16th Street, New York, New York (the "Building").

2.    The Policy issued by Commonwealth, for which 3W16 paid a significant premium, covers the vesting in 3W16 of a fee simple title to the Building and insures 3W16 against any losses or damages sustained by 3W16 by reason of, *inter alia*, its title to the Building vesting as something other than a fee simple interest or being otherwise defective or encumbered. Subject to the Policy exclusions and limitations, the Policy provides that Commonwealth, at its expense, will defend 3W16's fee simple title to the Building in a litigation in which a third party asserts a claim adverse to 3W16's fee simple title.

3.    Notwithstanding the clear terms of the Policy, Commonwealth refused to accept

{00088773 }

tender of 3W16's defense in a New York state court litigation commenced in February 2008 and captioned as *Magen David of Union Square, The Sixteenth Street Synagogue and 3 West Development LLC v. 3 West 16th Street, LLC*, Index No. 600573/2008 (the "Underlying Action"), in which 3W16's fee simple title to the Building has been directly and repeatedly challenged.  Because of Commonwealth's wrongful refusal to defend 3W16 in the Underlying Action, 3W16 has incurred substantial legal fees and expenses defending its title to the Building – which is precisely what 3W16 sought to avoid by purchasing the Policy.

4. In this action, 3W16 seeks declaratory relief with respect to Commonwealth's obligation to pay for the defense of 3W16 in the Underlying Action and reimbursement from Commonwealth for the attorneys' fees and legal expenses incurred by 3W16 by reason of Commonwealth's breach of its obligation to defend 3W16 from 2008 to date.

## The Parties

5. Plaintiff 3 West 16th Street, LLC is a limited liability company organized and existing under the laws of New York State.  At all times relevant to this Complaint, Jack Braha, a resident of New York, was a managing member of 3W16.  The only other member of 3W16 is Elliot Braha, a resident of New Jersey.

6. Defendant Commonwealth Land Title Insurance Company is an insurance company that was incorporated in Pennsylvania at the time the Policy was issued in 2006. Upon information and belief, Defendant Commonwealth was acquired by Fidelity National Financial, Inc., a Florida corporation, in or around 2008.  Upon information and belief, Defendant Commonwealth is now incorporated and headquartered in the state of Florida and has at all relevant times, including since its acquisition by Fidelity National Financial, continued to operate as the title insurance company that issued the Policy to 3W16.

## Jurisdiction and Venue

7.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332, because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

8.      Venue is proper in this Court under 28 U.S.C. §1391.

## Factual Background

**A.     The Building**

9.      On March 24, 2006, 3W16 purchased from the National Council of Israel a fee simple interest in the Building located at 3 West 16th Street, New York, New York.

10.     Also on March 24, 2006, 3W16 entered into a 35-year net lease agreement with 3 West Development LLC ("Development") (the "Lease"), which was personally guaranteed by Development's founder, Steven Ancona.  Under the terms of the Lease, Development was to draw down upon a renovation fund created by 3W16 that was capped at $2.85 million, as well as receive a rent-free occupancy in the Building through December 2007, partly in exchange for Development converting the top four floors of the Building into apartment units.  The parties agreed that, if at any point during the 35-year term, the upper four floors were sold as condominiums and certain monetary conditions were satisfied, Development would have occupancy of the basement and first and second floors of the Building rent-free for the remainder of the 35-year Lease term.

11.     During the Lease negotiations, Development had verbally indicated its intention, if all relevant Lease conditions were satisfied, to donate its rent-free occupancy of the basement, first and second floors of the Building to Magen David of Union Square and The Sixteenth Street Synagogue ("SSS") (together the "Synagogues"), which were operating synagogues in those portions of the Building at the time.

{00088773 }                                              3

12.     Development's intention to gift property to the Synagogues was neither included in the Lease nor agreed by or binding on 3W16.

**B.    The Policy**

13.     In connection with 3W16's purchase of the Building, 3W16 purchased the subject title insurance Policy (#A60-0843934) from Commonwealth on March 24, 2006.  The Policy provides $5,400,000.00 of insurance coverage for a premium of $22,885.00.  3W16 has maintained the Policy at all times relevant to this action.  (A copy of the Policy is attached as Exhibit A.)

14.     The Policy covers the vesting in 3W16 of a "Fee Simple" estate or interest in the Building.  (*See* Policy, Schedule A.)

15.     Subject to the exclusions, exceptions, conditions and stipulations in the Policy, Commonwealth insured 3W16 "against loss or damage . . ., sustained or incurred by the Insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land."

(*See* Policy Face Page.)

16.     In addition to insuring against these specified forms of loss or damage, under the Policy, Commonwealth also agreed to "pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations." (*See id.*)

17.     Among the Policy's Conditions and Stipulations is a section dedicated to the "Defense and Prosecution of Actions," which provides in pertinent part:  "Upon written request

by the insured . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy." (Policy Conditions and Stipulations § 4.)

    C.    **The Underlying Action**

18.    In or about late 2007/early 2008, Development defaulted under the Lease, causing the Lease by its own terms to terminate automatically and allowing 3W16 to evict Development and its subtenants, the Synagogues, from the Building. Those rightful and proper eviction efforts led to years of litigation in the Underlying Action.

19.    On February 26, 2008, Magen David of Union Square, The Sixteenth Street Synagogue and Development (collectively, the "Underlying Plaintiffs"), filed the Underlying Action. (A copy of the Verified Complaint filed in the Underlying Action (the "Underlying Complaint") is attached hereto as Exhibit B.)

20.    The Underlying Plaintiffs asserted claims to quiet 3W16's title to the Building, for several forms of declaratory relief, to enforce a charitable gift, for partition of the Building, for breach of the Lease and for specific performance. (*See id.* ¶¶ 76-155.)

21.    As is clear from the face of the Underlying Complaint, including but not limited to its cause of action to quiet 3W16's title in the Building and its myriad of allegations that one or more of the Underlying Plaintiffs hold ownership interests in the Building, the Underlying Action was filed with the express goal of establishing that 3W16 does *not* hold a fee simple title to the Building. (*See, e.g.*, *id.* ¶ 12 (SSS has "always maintained an equitable ownership interest in the Building . . ."); ¶ 16 (SSS "never considered its interest in the Building to be anything but

joint ownership"); ¶ 18 ("Due to SSS' equitable ownership in the Building . . . ."); ¶¶ 19-25 (summarizing 2003 litigation commenced by SSS against prior Building owner related to SSS' alleged equitable ownership in the Building); ¶ 27 (alleging that settlement of 2003 litigation "preserve[d] SSS' equitable ownership rights to the Building"); ¶ 28 ("SSS at all times preserved its claim to an equitable ownership interest in the Building"); ¶ 60 (referring to SSS' equitable ownership interest in the Building as "the very cornerstone of the entire project . . . remained and remains intact"); ¶ 74 ("[Plaintiffs] have commenced this action to protect their legal ownership interests in the Building"); ¶ 79 ("SSS is the equitable fee owner of the condominium unit (yet to be created) comprised of the entire first floor and basement of the Building."); ¶ 85 ("For all intents and purposes, [3W16] is not the owner of the Building."); ¶ 122 ("SSS should be deemed to be the owner of the basement and first floor of the Building."); ¶ 127 ("In addition to SSS' other claims for equitable ownership of the Building, SSS has an equitable ownership interest in the Building by virtue of the charitable gifts promised . . . .").

22. The Underlying Plaintiffs' attempt through the Underlying Action to establish that 3W16's ownership interest in the Building is less than fee simple, non-existent and/or encumbered by the Underlying Plaintiffs' alleged ownership interests in the Building is precisely the type of attack on title against which Commonwealth expressly agreed to defend 3W16 pursuant to the Policy.

**D.    The Improper Denial of Insurance Coverage**

23. On March 19, 2008, within weeks of the Underlying Action being filed, 3W16 and its then-counsel at Hartman & Craven LLP provided Commonwealth with timely written notice of the Underlying Action together with a copy of the Underlying Complaint, and tendered 3W16's defense to Commonwealth under the terms of the Policy.

24. By letter dated January 27, 2010 – *22 months* after receiving notice of the claim and the tender of defense – Commonwealth denied coverage to 3W16 under the Policy and refused to accept the tender of 3W16's defense in the Underlying Action (the "Denial Letter"). (A copy of the Denial Letter is attached as Exhibit C.)

25. In the Denial Letter, Commonwealth set forth its unreasonably narrow read of the Underlying Complaint. Relying on the Lease between 3W16 and Development, Commonwealth concluded that "[t]he cause of action stems from an agreement entered into by the Insured, without the Company's knowledge, and after the issuance of the policy," which, in Commonwealth's view, caused the claim to fall under the following Policy exclusion:

> 3. Defects, liens, encumbrances, adverse claims or other matters:
>
> a. Created, suffered, assumed or agreed to by the insured claimant;
>
> b. not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant;
>
> d. attaching or created subsequent to Date of Policy.

26. By incorrectly reading the Underlying Complaint to stem solely from the Lease, to which only 3W16 and Development were parties, Commonwealth ignored the cause of action to quiet 3W16's title, as well as the multitude of allegations, set forth above, in which the Underlying Plaintiffs directly challenge 3W16's title to the Building and assert their own equitable ownership interests in the Building.

27. Further undermining Commonwealth's conclusion that the claims asserted in the Underlying Complaint arise solely out of the Lease is the fact that Underlying Plaintiff SSS, a non-party to the Lease, alleged that its claim to an equitable ownership interest in the Building pre-dates the Lease, the Policy and 3W16's purchase of the Building. In fact, as detailed in the Underlying Complaint, SSS filed a lawsuit in 2003, years prior to issuance of the Policy,

asserting an equitable ownership interest in the Building, which SSS alleges was settled in such a way that preserves SSS' equitable ownership interest in the Building.  (Ex. B ¶¶ 19-28.)

28. In subsequent communications between 3W16's counsel and Commonwealth in the years that followed the original Denial Letter, Commonwealth has continuously and improperly refused to provide 3W16 with a defense and/or to reimburse 3W16 for the defense it had to fund itself due to Commonwealth's wrongful denial.

29. On August 3, 2015, Commonwealth and 3W16 entered into a tolling agreement ("Tolling Agreement"), which tolled the statute of limitations on the present dispute under the Policy.  On January 31, 2018, 3W16 provided Commonwealth with the requisite 30 days' notice that it was terminating the Tolling Agreement and thereby freeing 3W16 to commence the instant action.

**E.     The Underlying Action Goes On.  And On.**

30. As set forth above, it took Commonwealth 22 months to make a coverage determination and ultimately wrongly refuse to accept 3W16's tender of defense.  Not surprisingly, the Underlying Action did not wait 22 months to move forward.

31. As such and in order to protect its interests, 3W16 had no choice but to hire its own counsel at its own expense to defend its title to the Building against Underlying Plaintiffs' attempt to quiet 3W16's title and to assert their own ownership interests in the Building.

32. Although 3W16 has to date been successful in defending its title to the Building, doing so has taken nearly a decade of litigation, the defense of which should been provided by Commonwealth under the Policy and should be reimbursed by Commonwealth to 3W16 now.

33. Further, due to SSS' incessant appeals and repackaging and rearguing of the same equitable ownership claim to the Building, the Underlying Action is ongoing to this day.  As a

result, 3W16 will continue to incur significant legal fees defending its title in the Underlying Action, which should be paid by Commonwealth under the Policy going forward.

## **FIRST CLAIM FOR RELIEF**
(Declaratory Judgment)

34. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth herein.

35. Plaintiff 3W16 timely tendered its defense to Commonwealth concerning the claims in the Underlying Action, which are clearly an attack on 3W16's title to the Building.

36. Commonwealth has repeatedly and improperly refused 3W16's tender of defense under the Policy and denied 3W16's request to be reimbursed the defense costs already and still being incurred in defending its title.

37. Plaintiff 3W16 requests this Court interpret the Policy and issue a declaration that Commonwealth was and is required to provide 3W16's defense in the Underlying Action.

38. Under the terms of the Policy, where Commonwealth provides the insured with a defense in litigation, Commonwealth "shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel." (*See* Policy Conditions and Stipulations § 4.)

39. Because of Commonwealth's failure to accept tender of 3W16's defense in the Underlying Action in a timely manner, 3W16 had no choice but to hire its own counsel at its own expense.  3W16's counsel has now been representing 3W16 and successfully defending its title for years.  It would be prejudicial to 3W16, as well as inefficient, to allow Commonwealth to substitute in different counsel to defend 3W16 in the Underlying Action at this time.

40. Plaintiff  3W16 is entitled to declaratory relief stating that (1) Commonwealth is

obligated under the Policy to provide 3W16's defense in the Underlying Action; (2) 3W16 is entitled to reimbursement from Commonwealth for the legal fees and expenses incurred defending the Underlying Action to date; (3) 3W16 is entitled to continue using counsel of its choice, at Commonwealth's expense, for the remainder of the Underlying Action; and (4) in the event 3W16 is not successful in the remainder of the Underlying Action in defending its title to the Building, 3W16 is entitled to coverage under the Policy for any damages or losses resulting therefrom.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

41. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth herein.

42. The Policy is a valid, binding agreement between 3W16 and Commonwealth.

43. 3W16 at all times complied with its obligations under the Policy.

44. Under the terms of the Policy, Commonwealth agreed to "pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured . . . ." (*See* Policy Face Page.)

45. The Underlying Action asserts allegations and claims against 3W16's title to the Building as insured and therefore falls squarely under the terms of the Policy.

46. Commonwealth's continued refusal to accept tender of 3W16's defense in the Underlying Action and to reimburse 3W16 for the legal fees and expenses incurred by 3W16 in defending its title in the Underlying Action constitutes a breach of the terms of the Policy.

47. As a result, 3W16 has suffered and continues to suffer damages in an amount to be proven at trial, but reasonably believed to be not less than the amount of legal fees and expenses incurred in the Underlying Action, which far exceed the $75,000 jurisdictional threshold.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff 3W16 respectfully requests this Court enter judgment:

a. On the First Claim for Relief, for a declaratory judgment stating that (1) Commonwealth is obligated under the Policy to provide 3W16's defense in the Underlying Action; (2) 3W16 is entitled to reimbursement from Commonwealth for the legal fees and expenses incurred defending the Underlying Action to date; (3) 3W16 is entitled to continue using counsel of its choice, at Commonwealth's expense, for the remainder of the Underlying Action; and (4) in the event 3W16 is not successful in the remainder of the Underlying Action in defending its title to the Building, 3W16 is entitled to coverage under the Policy for any damages or losses resulting therefrom;

b. On Second Claim for Relief, for damages in the amount to be determined at trial;

c. attorneys' fees and the costs of this action; and

d. such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure Plaintiff hereby demands a trial by jury.

Dated:   March 2, 2018
         White Plains, New York

YANKWITT LLP

By:  s/Dina L. Hamerman
     Dina L. Hamerman
     Alicia A. Tallbe
     140 Grand Street, Suite 705
     White Plains, New York 10601
     Tel:  (914) 686-1500
     Fax:  (914) 801-5930
     dina@yankwitt.com
     alicia@yankwitt.com
     *Attorneys for Plaintiff*